# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

April 21, 2008

Abraham S. Alter
Langton & Alter
P.O. Box 1798
Rahway, NJ 07065
    *(Attorney for Plaintiff*)

Stephen P. Conte
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
    *(Attorney for Defendant)*

    RE:    **Sedlak v. Commissioner of Social Security**
              **Civ. No. 06-3663 (WJM)**

Dear Counsel:

    Plaintiff Kenneth Sedlak brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act"), as amended, seeking review of the final determination by the Commissioner of Social Security ("Commissioner") denying his request for Supplemental Security Income ("SSI") under Title II of the Act, 42 U.S.C. §§ 401-433. For the reasons articulated below, the Court will **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff was born in 1949. (R. at 79.)[1] Plaintiff formerly worked as a roofer as well as a cloth cutter and spreader for several years. (R. at 18.) Plaintiff claims that he is disabled because he has suffered from a seizure disorder since approximately 1999. (R. at 15, 65, 422.) On January 27, 2003, Plaintiff applied for SSI under Title XVI of the Act. (R. at 71.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 15.) On January 6, 2005, a hearing was held before Administrative Law Judge John M. Farley ("ALJ"). (*Id.*)

On September 17, 2005, the ALJ entered a decision finding that Plaintiff was not disabled and therefore not entitled to SSI under the Act. (R. at 15-21.) Applying the familiar five-step disability analysis, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. at 19.) Then, at step two, the ALJ concluded that the evidence established that Plaintiff suffered from two severe impairments: a seizure disorder and alcohol abuse. (*Id.*) The ALJ further determined that Plaintiff's osteopenia, left ventricular hypertrophy, and uncontrolled hypertension were not severe. (R. at 20.) Next, at step three, the ALJ found that Plaintiff met Listing 12.09,[2] which addresses substance addiction disorders. *See* 20 C.F.R. Part. 404, Subpart P., Appendix 1. Listing 12.09 "is structured as a reference listing; . . . it . . . only serve[s] to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." *Id.* § 12.00(A). The required level of severity for a substance addiction disorder is met when, as a result of substance abuse, the requirements in one or more of Listings 12.02, 12.04, 12.06, 12.08, 5.05, 5.04, 5.08, 11.02, 11.03, or 11.14 are satisfied. *Id.* § 12.09. Accordingly, the ALJ looked to Listing 11.02,[3] Epilepsy - convulsive epilepsy, and determined that Plaintiff met the clinical criteria and therefore satisfied the

---

[1]   The designation "R." refers to the administrative record.

[2]   Listing 12.09, Substance Addiction Disorders, requires the claimant to show "behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorders is met when the requirements in any of the following . . . are satisfied." 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ is directed to evaluate nine disorders according to other Listings: (A) organic mental disorders to be evaluated under Listing 12.02; (b) depressive syndrome under 12.04; (C) anxiety disorders under 12.06; (D) personality disorders under 12.08; (E) peripheral neuropathies under 11.14; (F) liver damage under 5.05; (G) gastritis under 5.04; (H) pancreatitis under 5.08; and (I) seizures under 11.02 or 11.03. *See id.*

[3]   Listing 11.02, Epilepsy - convulsive epilepsy, requires that the claimant suffer from seizures at least once a month despite at least three months of prescribed treatment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02.

requirements for Listing 12.09.  However, pursuant to 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 416.935(b), in the event that alcohol is a contributing factor material to the determination of disability, the ALJ must assess whether the individual would still be disabled if he abstained from alcohol.  In the case at hand, the ALJ determined that in the absence of alcohol, Plaintiff would have no remaining severe limitations, and, thus, Plaintiff was not disabled under the Act.

Plaintiff requested review by the Appeals Council, which was denied on June 1, 2006.  (R. at 6.)  Accordingly, the ALJ's decision became final.  Plaintiff now appeals this decision.

## II.   STANDARD OF REVIEW

This Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence.  *See Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance.")  Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner.  "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

This Court must affirm the decision if it is supported by substantial evidence.  *See Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981).  It does not matter whether this Court, if acting *de novo*, would have reached a different conclusion.  *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).

## III.  ANALYSIS

Plaintiff does not challenge the ALJ's step one and step two determinations that he was both unemployed during the relevant period and suffered from two severe impairments: a seizure disorder and alcohol abuse. (Pl.'s Br. 20.)  Plaintiff's first argument is that the ALJ failed to appropriately consider the fact that Plaintiff stopped drinking in 2004.  (Pl.'s Br. 25.)  Second, Plaintiff contends that the ALJ's determination that, absent alcohol abuse he would not have any remaining severe limitations, was not supported by substantial evidence.  (Pl.'s Br. 22.)  Lastly, Plaintiff argues that the ALJ

incorrectly determined that his osteopenia, chronic obstructive pulmonary disease, and uncontrolled hypertension were not severe. (Pl.'s Br. 32-33.) As discussed below, the Court finds that each argument lacks merit. Accordingly, the ALJ's decision is affirmed.

### A. Plaintiff's Alleged Discontinuation of Alcohol Use

Plaintiff generally contends that the ALJ erred in concluding that Plaintiff continued to abuse alcohol after June 3, 2004 thereby contributing to his seizures.[4] To support this contention, Plaintiff relies merely on his testimony that he has abstained from alcohol abuse since June 3, 2004, and has continued to suffer seizures since that date despite abstaining from alcohol abuse.

An ALJ may reject a claimant's testimony if he does not find it credible so long as he explains why he is rejecting the testimony. *See Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999); SSR 96-7p. Great weight is given to a claimant's subjective testimony when it is supported by competent medical evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979).

Plaintiff contends that the ALJ made no conclusion regarding his assertion that he had abstained from alcohol abuse since June 2004.[5] However, the ALJ specifically addressed this issue and concluded that Plaintiff was "not fully credible regarding his assertions of sobriety." (R. at 19.) The ALJ based this finding on a June 2005 post-hearing consultative exam which occurred approximately one year after Plaintiff's first alleged date of sobriety, June 3, 2004. At the examination, Plaintiff acknowledged that he consumed two shots of vodka per day for "many years until two years ago" and now "drinks one to two beers every day." (R. 406.) Moreover, the examiner, Dr. Sinha noted that Plaintiff had alcohol on his breath during the examination. (R. at 407.) Additionally, Plaintiff put forth no objective medical evidence to support his assertion that he maintained a period of sobriety.

Based on the conflicting evidence and a lack of objective medical evidence in

---

[4] To the extent that Plaintiff also contends that the ALJ failed to properly evaluate his subjective complaints of pain, the Court's review of the record finds little evidence to conclude that Plaintiff experienced any pain. At the hearing, Plaintiff's testimony was primarily focused upon how often his seizures occurred, his struggle with alcohol, his previous employment, and his medication. (R. at 412-56) This Court's comprehensive review of the record yields no evidence of any subjective complaints of pain. Accordingly, the Court finds that the ALJ appropriately disregarded Plaintiff's subjective complaints of pain since the record is devoid of any such complaints.

[5] Specifically, Plaintiff stated that he stopped drinking on June 3, 2004. (R. at 419, 425.)

4

support of Plaintiff's contention, the Court finds that the ALJ's determination that Plaintiff was not fully credible concerning his allegation of sobriety was supported by substantial evidence. Thus, the Court cannot conclude, as Plaintiff argues, that the ALJ failed to properly evaluate his subjective testimony with regard to his discontinued abuse of alcohol. Finally, pursuant to his well-founded determination that Plaintiff did, in fact, continue to drink alcohol after June 3, 2004, the ALJ appropriately concluded that, based on objective medical testimony,[6] Plaintiff's continued use of alcohol contributed to his seizures.

### B. Alcohol as a Contributing Factor Material to Disability Determination

"An individual shall not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The "key factor" in assessing whether alcoholism is a contributing factor material to the determination of disability is "whether [the Commissioner] would still find [the claimant] disabled if [he] stopped using . . . alcohol." 20 C.F.R. § 416.935(b)(1). When considering whether the claimant would be disabled if he stopped using alcohol, the Commissioner "evaluate[s] which of [the claimant's] current physical and mental limitations, upon which [he] based [his] current disability determination, would remain if [the claimant] stopped using . . . alcohol and then determine[s] whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 416.935(b)(2). "If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the claimant's] . . . alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i).

#### i. History of seizures and alcoholism

The ALJ based his conclusion that Plaintiff suffered no disabling limitations absent his abuse of alcohol on substantial evidence in the record. Plaintiff's alcohol abuse and seizure disorder is well documented. As the ALJ noted, Raritan Bay Medical Center ("RMBC") records are replete with references to Plaintiff's alcohol abuse and withdrawal seizures as well as Plaintiff's non-compliance with his prescription of Dilantin, which controls seizure activity. The first medical records provided by RMBC are from December 1995 through November 2002. These records indicate that Plaintiff was diagnosed with alcohol withdrawal, a seizure disorder which was treated with

---

[6] Martin Fechner M.D., testified at the hearing that, "it is impossible to control seizures when drinking" and further opined that "[Plaintiff] doesn't have anything that is not a direct result of the alcohol . . . ." (R. at 435.)

5

Dilantin, and a long-standing history of alcohol abuse. (R. at 108-145.) Lab reports repeatedly show that Plaintiff's Dilantin levels were sub-therapeutic and at one point, Plaintiff was too intoxicated to be examined. (R. at 121-145.) Plaintiff was admitted to RMBC again on December 15, 2002 due to seizure activity, where he was once more diagnosed with alcohol abuse, seizures, and alcohol withdrawal. (R. at 160.) Furthermore, it was recommended that Plaintiff undergo alcohol detoxification. (R. at 152.) There was no evidence of compliance with the recommended detoxification. Plaintiff was readmitted on February 8, 2003, where he was diagnosed with a seizure disorder and heavy alcohol abuse. (R. at 202-253.) After his February admission, Plaintiff was additionally admitted to RMBC on six occasions in 2003. (R. at 254-373.) Each of these admissions primarily resulted in a diagnosis of alcohol dependence or intoxication and seizure disorder. (*Id*.) On January 15, 2004, Plaintiff was again admitted to RMBC and diagnosed with alcohol withdrawal, alcohol intoxication, and a history of seizure disorder. (R. at 374-404.) This time, however, Plaintiff's Dilantin level was found to be within the therapeutic range. (R. at 376.) Plaintiff also testified that he had been to the emergency room over eight times in 2004 due to severe trembling, black outs, and seizures.[7] (R. at 425.)

Accordingly, there is substantial evidence in the record, specifically, the outpatient notes from RMBC that diagnose a seizure disorder and alcohol abuse, to support the ALJ's conclusion that Plaintiff suffered a Substance Addiction Disorder as defined in Listing 12.09 in conjunction with Epilepsy as outlined in Listing 11.02.

### ii.   Remaining limitations absent alcohol abuse

The ALJ undertook a detailed and thorough analysis in reaching his conclusion that absent alcohol abuse, Plaintiff would not be disabled. To begin, in December 2002, while admitted to RMBC, it was determined that Plaintiff was experiencing alcohol withdrawal. (R. at 166.) Accordingly, Plaintiff underwent detoxification in the treatment facility and significantly, he did not have any seizure activity once treatment commenced and for the duration of his hospital stay. (R. at 167.) Soon thereafter, on February 7, 2003, Plaintiff was again admitted to RMBC, and attending physician, Ibrahim Sidhom M.D., noted that Plaintiff's Dilantin levels were sub-therapeutic and suspected alcohol withdrawal seizures. (R. at 210, 213.) On February 22, 2003, Plaintiff was brought to RMBC's emergency room and a lab report indicated Plaintiff's Dilantin levels were once again below therapeutic levels. (R. at 257.) On July 15, 2003, Plaintiff was seen in the emergency room and diagnosed with alcohol intoxication and a seizure disorder,

---

[7] Plaintiff failed to provide any documentation to support his assertion regarding his 2004 admissions to the emergency room.

6

secondary to non-compliance with prescribed medication. (R. at 282.) On August 16, 2003, after the police brought Plaintiff to the emergency room for drinking on someone's porch, it was noted that Plaintiff's Dilantin was below therapeutic levels. (R. at 294-95.) On September 19, 2003, after Plaintiff suffered a laceration on his chin caused by a fall while drunk, he was once again diagnosed with alcohol intoxication, alcohol abuse, and a seizure disorder, secondary to non-compliance with medication. (R. at 318, 328-30, 333, 341, 343-48.) On December 2, 2003, Plaintiff was again admitted to RMBC. (R. at 350.) At this time, it was noted that Plaintiff was a known alcoholic, that he had alcohol on his breath, and that he last drank alcohol the day before his admission. (R. at 350-73.) On January 15, 2004, RMBC notes indicated that Plaintiff's Dilantin level was within therapeutic range, however, Plaintiff only reported that he had stopped drinking three days prior to this admission. (R. at 374-404.)

In addition to the treatment records from RMBC, the ALJ ordered Plaintiff to undergo a consultative examination with Dr. Sinha on June 14, 2005. (R. at 405-11.) During the exam, Plaintiff admitted that he consumed one to two cans of beer a day, and Dr. Sinha reported that Plaintiff had alcohol on his breath. (R. at 406-07.) Additionally, Dr. Sinha opined that plaintiff could, "be fully functional if his seizures were controlled with appropriate medications and dosage." (R. at 409.)

The ALJ also relied on the expert testimony of Martin Fechner, M.D., who testified at the hearing. (R. at 434-55.) After reviewing Plaintiff's records Dr. Fechner provided three diagnoses: alcoholic, alcohol withdrawal seizures, and mild high blood pressure. (R. at 435.) Dr. Fechner testified that, "it is impossible to control seizures when drinking" and further opined that, "[Plaintiff] doesn't have anything that is not a direct result of the alcohol . . . ." (*Id.*)[8]

The ALJ's conclusion that Plaintiff would not be disabled absent his alcohol abuse is supported by substantial evidence. The record reflects that Plaintiff consistently abused alcohol during the relevant period of Plaintiff's alleged disability. The RMBC records also indicate that Plaintiff continually failed to comply with prescribed medication, Dilantin, until at least January 15, 2004. RMBC records show consistent diagnosis of

---

[8] To the extent that Plaintiff argues that Dr. Fechner was unable to project what limitations would remain if Plaintiff stopped abusing alcohol, Plaintiff misinterprets Dr. Fechner's testimony. Dr. Fechner, although unable to determine the severity of the impact that alcohol had on Plaintiff, nonetheless, determined that "[Plaintiff does not have anything that is not a direct result of the alcohol . . . ." (R. at 435.) Furthermore, even if Plaintiff did, in fact, have an underlying seizure disorder, Dr. Sinha reported that Plaintiff's seizures could be controlled with appropriate medications and dosage. (R. at 439-40.)

7

alcoholism, alcohol withdrawal seizures, and seizures secondary to non-compliance with medication.

Based on the record as outlined above, there is substantial evidence to support the ALJ's conclusion that Plaintiff's seizures regularly declined or were completely eliminated when he complied with prescribed medication and avoided abusing alcohol. Furthermore, even if the Court assumes that Plaintiff in fact has an underlying seizure disorder, there is substantial evidence in the record that the seizures could be effectively controlled by compliance with prescribed medication if Plaintiff abstained from alcohol.[9] Therefore, the ALJ's conclusion that absent alcohol consumption, Plaintiff would not have any remaining disabling limitations is supported by the record. Additionally, as the ALJ found that there were no remaining disabling limitations once Plaintiff stopped using alcohol, he appropriately did not move on to steps four and five of the five-step process.

### C.     Other impairments

At step two of the five-step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S.Ct. 2287, 2291 (1987); SSR 86-8, 1986 SSR LEXIS 15, at *6-7; SSR 85-28, 1985 SSR LEXIS 19, at *1. According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a) . Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling . . ." *See* 20 C.F.R. § 140.1521(b). However, the burden placed on an applicant in step two is not great. *McCrea v. Commissioner*, 370 F.3d 357, 360 (3d Cir. 2003). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. *See Newell v. Commissioner of Social Security*, 347 F.3d 541, 546-47 (citing SSR 85-28, 1985 SSR LEXIS 19, at *11-12).[10]

---

[9] Dr. Fechner testified that "Dilantin doesn't do any good when you're drinking." (R. at 435.)  Furthermore, Plaintiff admits he was informed by doctors that consumption of alcohol would neutralize the effect of Dilantin, even if he complied with prescribed dosages.  (R. at 427.)

[10] SSR 85-28, 1985 SSR LEXIS 19, at *11-12, states that "[g]reat care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect on an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued."

Plaintiff argues that the ALJ incorrectly determined that his osteopenia, uncontrolled hypertension, and chronic obstructive pulmonary disease were not "severe," either alone or in combination.  In support of this contention, Plaintiff cites to his post-hearing consultative exam with Dr. Sinha.  (R. at 405-411.)  The Court disagrees.

First, it should be noted that the only impairment Plaintiff identified on the forms he submitted as part of the disability application and appeals process was a seizure disorder.  (R. at 88, 102.)  Plaintiff provided no testimony at the hearing or otherwise on any of these alleged disabilities.  However, at the hearing and in Plaintiff's brief to this Court, Plaintiff now asserts that he also suffers from these additional diseases.

Second, there is substantial evidence to support the ALJ's finding that Plaintiff's other alleged disabilities are not "severe," within the meaning of the Act.  Dr. Fechner testified at the hearing that Plaintiff's osteopenia did not establish any type of severe problem and that osteopenia, in itself, is not limiting.  (R. at 446.)  Dr. Fechner further testified that there was no evidence of any serious heart problem and noted that an echocardiogram was within normal range.  (R. at 447.)  Dr. Fechner also concluded that other than the previously analyzed seizures, Plaintiff was remarkably healthy.  (R. at 435.)

Third, Dr. Sinha's report failed to show that there were any additional diseases that were severe within the meaning of the Act.  After a June 14, 2005 consultative exam, Dr. Sinha opined that Plaintiff had no limitations regarding his ability to push, pull, stand, walk, lift, or carry.  (R. at 408-09.)  Moreover, Dr. Sinha's examination of the heart showed a regular rhythm with no evidence of murmur, gallop, or congestive heart failure.  (R. at 406.)  The ALJ acknowledged a reference to uncontrolled hypertension in Dr. Sinha's June 2005 report, but as the ALJ pointed out, the record is devoid of any detectable limitations in functioning due to his uncontrolled hypertension.  (R. at 20.)

### i.     Postural and environmental limitations

To support his contention that he has met the severity burden of step three, Plaintiff relies, in part, upon Dr. Sinha's Medical Source Statement of Ability to do Work-Related Activities, citing certain postural and environmental limitations.  Included in these limitations was Dr. Sinha's opinion that Plaintiff should never engage in climbing or balancing and had a limited ability to tolerate temperature extremes, vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases, as each of these can "precipitate seizures."  (R. at 408-411.)

However, what Plaintiff's fails to recognize is that Dr. Sinha's assessment of

Plaintiff's limitations was based on Plaintiff's physical state at the time of his examination.  As previously noted, not only did Plaintiff tell Dr. Sinha that he regularly drank one to two beers a day, but Dr. Sinha reported that Plaintiff had alcohol on his breath during the examination.  Accordingly, Dr. Sinha's assessment of Plaintiff's postural and environmental limitations was based upon a period of time in which Plaintiff, according to his own testimony, had been abusing alcohol and still suffering the effects of seizures.  However, pursuant to 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 416.935(b), the ALJ must assess whether Plaintiff would still be disabled if he abstained from alcohol.  Based upon Dr. Sinha's opinion that "claimant can be fully functional if his seizures are controlled with appropriate medication and dosage," as well as, Dr. Fechner's opinion that Plaintiff did not suffer any limitations that were not a result of his alcohol abuse, the ALJ appropriately determined that, absent alcohol abuse, Plaintiff did not suffer any severe limitations within the meaning of the Act.  Thus, the Court cannot conclude that the limitations described in Dr. Sinha's report were attributable to Plaintiff's osteopenia, uncontrolled hypertension, or chronic obstructive pulmonary disease.

      The ALJ's findings were well-reasoned and well-supported by the record that Plaintiff's other alleged disabilities are not "severe" as they did not significantly limit his ability to do basic work activities.  Accordingly, the Court finds that the ALJ's determination was based upon substantial evidence.

## IV.  CONCLUSION

      For the foregoing reasons, the ALJ's decision to deny SSI benefits to Plaintiff Kenneth Sedlak is **AFFIRMED**.  An appropriate Order accompanies this Opinion.

William J. Martini<br>
William J. Martini, U.S.D.J.